# In the District Court of the United States
## For the District of South Carolina
### BEAUFORT DIVISION

| | |
|---|---|
| Samuel Cooper, # 261899, | ) |
| | )    Civil Action No.  9:06-1505-CMC-GCK |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | )    **REPORT AND RECOMMENDATION** |
| S.C.D.C.; John Ozmint; and | )        **OF THE MAGISTRATE JUDGE** |
| Henry McMaster, Attorney General | ) |
| of the State of South Carolina, | ) |
| | ) |
| Respondents. | ) |

## I.    INTRODUCTION

The Petitioner, Samuel Cooper ("Petitioner" or "Cooper"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code, Section 2254.  By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3).  This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  The above-named Respondents have filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.

## II.    *PRO SE* PETITION

Cooper is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of  28 U.S.C. § 1915, 28

U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

     *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.    HISTORY OF THE CASE

### A.  Background

Cooper lived with his girlfriend, Sadie W. Conyers, in Kingstree, South Carolina.  On April 23, 1999, Cooper and Conyers had an argument.  Conyers left their home and went to her mother's home.  She returned later that night, and fell asleep around 11 p.m. in the bedroom. Cooper came home, and Conyers awoke to find him yelling and hollering in a hyper-like state. Conyers saw that Cooper was holding his .22 caliber revolver, and was waving it around. Conyers told Cooper to put the gun down.  When Conyers got out of bed and walked to the dresser, Cooper shot Conyers in the chest.  Conyers later testified at trial that Cooper did not realize he had shot her, and "acted like he was surprised".  (App. 28; 39)  Cooper drove Conyers to the hospital.

Later that day, Cooper was Mirandized and confessed to the shooting.  He gave a written statement to the sheriff's department and his statement also was audio taped and transcribed. (App. 65-73)  According to his written statement:

> We were playing with the gun and I put the gun on her and didn't know it was cock[ed] and the gun went off accidental.  [Sic]  Then she said you shot me and I said Oh sh– and I put her in the car and dr[o]ve her to the hospital.  (App. 258)

Cooper, on the audiotape, explained the events to the Sheriff:

> We were playing with the gun.  And I snatched the gun, and turned around.  And I didn't know the gun was locked.  When I snatched it and turned around, the gun went off and shot her in the chest.  She said you shot me.  And I didn't even know she was shot.  It sounded like firecrackers. And I grabbed her, and took her to the hospital.  (App. 72)

### B.  Proceedings in the Court of General Sessions

During the June 1999 term of the Williamsburg County Grand Jury, the grand jury issued a two count indictment charging Cooper with assault and battery with intent to kill and possession of a weapon during a violent crime (99-GS-45-139).  (App. 142-143)  Cooper pled not guilty to the charges.  (App. 3, 112)

Cooper went to trial on October 19, 1999 at the Sumter County Courthouse in Kingstree, South Carolina before the Honorable M. Duane Shuler, Circuit Court Judge, and a jury. He was represented by Public Defender W. Legrand Carraway, Esquire. Cooper was not present at the beginning of the trial, but entered the courtroom shortly after Conyers began to testify. (App. 12, 16) At the close of the State's case, Attorney Carraway made a motion for a directed verdict on the grounds that Conyers testified that Cooper discharged the gun accidentally, Cooper did not know the gun had gone off, and Cooper seemed genuinely surprised when Conyers told him she had been shot. Carraway argued that there was no testimony to support the State's charge that Cooper intended to kill Conyers. (App. 78-80) Judge Shuler denied the motion for a directed verdict. (App. 82) Cooper did not testify at trial.

Cooper was found guilty as charged. (App. 127) After the jury was polled, Carraway made a motion for a new trial and a motion for judgment notwithstanding the verdict. (App. 129-130) Judge Shuler denied the motions. (App. 130-132) Cooper was sentenced by Judge Shuler to confinement for a period of fifteen (15) years on assault and battery with intent to kill and five (5) years on possession of a weapon during a violent crime, with the sentences to run concurrently. (App. 139-140)

### C. Cooper's Appeal

A timely Notice of Appeal was filed on Cooper's behalf by Wanda H. Haile of the South Carolina Office of Appellate Defense. On March 16, 2001, counsel filed an *Anders*[1] Brief in which she raised one ground for relief: "The lower court erred in failing to charge the law on

---

[1]    *Anders v. California*, 386 U.S. 738 (1967). *Anders* requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited. *See Anders*, 386 U.S. at 744. *See also Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (S.C. 1988).

accident in the case." (App. 145-155) On May 8, 2001, Cooper filed a *pro se* pleading which requested that he be allowed to drop his direct appeal and file for post-conviction relief.[2]

The South Carolina Court of Appeals denied Cooper's motion to withdraw his appeal. After reviewing the record as required by *Anders v. California* and *State v. Williams*, the court held there were no directly appealable issues that were arguable on their merits. The court dismissed Cooper's appeal and granted counsel's petition to be relieved. *State v. Cooper*, Op. No. 2001-UP-542 (S.C. Ct. App. filed December 17, 2001) (*per curiam*).[3] (App. 156-157) On January 17, 2002, the Court of Appeals entered its Remittitur.[4]

### D. Cooper's Application for Post-Conviction Relief

The Petitioner timely filed an application for post-conviction relief ("PCR") on January 11, 2002. (App. 158-167) He alleged the following grounds for relief:

A. Ineffective Assistance of Counsel (App. 159):

1. Trial Counsel waived opening statement.

2. During trial, counsel's closing argument to the jury was confusing and not supported by facts.

3. Counsel erred in failing to allow the judge to charge lesser included offense of assault and battery of a high and aggravated nature and assault with intent to kill. (App. 164-165)

4. Counsel was ineffective in failing to adequately consult with Cooper on the lesser included offense charges. (App. 165-166)

The State made its Return on October 22, 2003. (App. 168-171) The State characterized Cooper's PCR application as one essentially setting forth various claims of ineffective assistance of counsel.

---

[2]    Cooper's letter dated May 8, 2001 is included as Exhibit 10 to Respondents' Return. [12]

[3]    The Court stated in its Order that "Cooper filed a *pro se* document in which he asks that he be allowed to drop his appeal." (App. 157)

[4]    The Remittitur is attached to the Respondents' Return [12] as Exhibit 12.

An evidentiary hearing was convened on November 20, 2003 before the Honorable B. Hicks Harwell, Circuit Court Judge, at the Williamsburg County Courthouse.  Cooper was present and was represented by Charles David Barr, Esquire.  The State of South Carolina was represented by Salley Wood Elliott of the South Carolina Attorney General's Office.  (App. 172-250)

An applicant bears the burden of proving the allegations in his application for PCR. *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813, 814 (S.C. 1985) (citation omitted), *cert. denied*, 474 U.S. 1094, 106 S.Ct. 869 (1986).  Cooper testified at the evidentiary hearing.  (App. 176-203)  Cooper's trial attorney, Carraway, testified on behalf of the State.  (App. 203-248)  At the hearing, Cooper's PCR allegations were amended to assert the following claims:

1.  He received ineffective assistance of counsel because trial counsel waived the opening argument to the jury; (App. 194-195)

2.  His attorney was ineffective when he advised the Applicant against testifying at trial; (App. 190-191)

3.  His attorney incorrectly informed the trial court that he discussed with the Applicant whether the jury should be charged on assault and battery of a high and aggravated nature; (App. 192-193; 196)

4.  His attorney improperly declined a jury charge on assault and battery of a high and aggravated nature; (App. 192-193)

5.  His attorney provided a confusing and conflicting closing argument to the jury; (App. 193-194), and

6.  His attorney failed to pursue a defense and jury charge on the law of accidental shooting.[5] (App. 196)

Judge Harwell issued a written Order of Dismissal denying relief; the Order was filed with the Clerk of Court for Williamsburg County on January 6, 2004.  (App. 251-257)

---

[5]     As mentioned above, the *Anders* Brief stated the issue on appeal as "The lower court erred in failing to charge the law on accident in the case."  (App 145-155)

### E.  Cooper's Petition for a Writ of Certiorari

On July 9, 2004, Aileen P. Clare, Assistant Appellate Defender, acting on Cooper's behalf, filed a Petition for a writ of certiorari to the South Carolina Supreme Court.[6]  Ms. Clare set forth the following issue for review:

> Was trial counsel ineffective for not requesting a jury instruction on the lesser-included offense of assault and battery of a high and aggravated nature?

The Respondents, represented by Ms. Elliott, made a return on September 22, 2004.[7]  On March 28, 2006, the Court of Appeals entered a Letter Order denying the Petition for Writ of Certiorari.  On April 14, 2006, the Remittitur was handed down.

### IV.  FEDERAL COURT HISTORY

### A.  Cooper's Petition for a Writ of Habeas Corpus

Cooper is presently confined to at the Florence County Detention Center as a designated facility of the South Carolina Department of Corrections ("SCDC") pursuant to orders of commitment of the Williamsburg County Clerk of Court.[8]  Cooper filed this Petition for a writ of *habeas corpus* (the "Petition") against the SCDC, Jon Ozmint, and Henry McMaster, the Attorney General of the State of South Carolina (collectively, the "Respondents").[9]  [1-1]. The Petition set forth four (4) grounds for relief, which are set forth in their entirety below:

I.    Trial counsel ineffective for waiving opening statements.

---

[6]    The Petition is attached to Respondents' Return [12] as Exhibit 5.

[7]    The Return to the Petition for a Writ of Certiorari is attached to Respondents' Return [12] as Exhibit 4.

[8]    *See* Respondents' Return [12] at 1.  As Respondents' Return indicates, Florence County Detention Center is a designated facility of the SCDC, and therefore the SCDC is the proper "custodian" of the Petitioner.

[9]    With respect to the "delivery" date of his Petition, Cooper has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) (prisoner's pleading was filed at the moment of delivery to prison authorities for forwarding to the District Court).  The *Houston v. Lack* date cannot be determined by the court's examination of the envelope, but it appears that Cooper filed his Petition in May 2006.  The Respondents have not contested the timeliness of Cooper's Petition.

A. This was prejudicial error and such waiver by trial counsel allowed the state to paint a one-sided picture of the charge incident concerning applicant and such waiver sent a direct message to the jury that applicant was guilty as charged and the defense was not at all challenging or rebutting the state's case.

II.     Trial Counsel talked against the Applicant.

A. In closing argument, trial counsel discredited the Appellant saying he screwed up bad and he's 100% to blame for what happened that night. Then trial counsel said that an accident is when you're walking along something falls out of somewhere. This isn't an accident - stated by trial counsel.

III.    The lower court erred in failing to charge accident in the case.

A. Mrs. Conyers stated that we got close to each other and she reached out and she don't know if he thought I was trying to grab the gun or what. Also when Mrs. Conyers ask by trial counsel did she touch the gun at all? Mrs. Conyers "I don't remember", Mrs. Conyers stated that after she got shot appellant didn't realize that he still had shot me.

IV.     Trial counsel ineffective for not requesting a jury instruction on the lesser included offense of Assault and Battery of a High and Aggravated Nature.

A. Trial counsel decline the offer not once but three times. Counsel testified that he refused the ABHAN instruction to prevent a compromise verdict. This was not a reasonable tactic when petitioner was holding a loaded hand gun. Since the nature of Petitioner's intent was very much in dispute at trial, the jury could rationally have convicted petitioner of ABHAN if that option had been accepted.

On May 3, 2006, the undersigned issued an Order which authorized service on the Respondents and notified Cooper of the change of address rule. [4-1; 5-1] Thereafter, the Respondents moved for an enlargement of time in which to respond to the Petition. [9-1] The motion was granted by the undersigned on July 21, 2006. [11-1] On August 21, 2006, in response to Cooper's Petition for *habeas corpus* relief, the Respondents filed a Motion for Summary Judgment and a Return and Memorandum of Law in support of Motion for Summary Judgment (the "Motion for Summary Judgment"). [13-1; 12-1]

On August 22, 2006, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Cooper of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Motion for Summary

Judgment.[10]  [15-1]  On August 28, 2006, Cooper filed a response to Respondents' Motion.  [10-1]

## B.  Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P; *see* Habeas Corpus Rules 5-7.

## C.  Exhaustion of State Court Remedies

Relief under Section 2254 may be had only after a *habeas* petitioner has exhausted his state court remedies:  "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in *habeas*. Claims not so raised are considered defaulted."  *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b).  This Court's exhaustion requirements under Section 2254 are fully set forth in *Matthews v. Evatt*, 105 F.3d 907, 910-911 (4th Cir.), *cert. denied*, 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims.  Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.]

> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court.  The burden of proving that a claim has been exhausted lies with the petitioner.

> The exhaustion requirement, though not jurisdictional, is strictly enforced[.] (Citations omitted)

In order to exhaust his claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160 (the "Act").  The applicant may allege constitutional violations in a PCR

---

[10]     The explanation to the *pro se* litigant is required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case.  The same procedure has been held to apply in federal *habeas corpus* cases under *Webb v. Garrison*, No. 77-1855 (4th Cir., decided July 6, 1977).

proceeding, but only if the issue could not have been raised by direct appeal. *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), *citing* S.C. Code Ann. §§ 17-27-20(a)(1), (b). "Exhaustion includes filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." *Gibson v. State*, 329 S.C. at 42, 495 S.E.2d at 428. As the South Carolina Supreme Court has explained: "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies. *In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).

Just as the exhaustion doctrine requires that a claim be fairly presented to all appropriate state courts before it is raised in a Section 2254 petition, if a claim has not been presented but no state remedy remains available, the claim will be considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288 (1989). A claim that has been procedurally defaulted in state court usually will not be reviewed in a Section 2254 petition.

However, the requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *See Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1989). A federal court will hear a procedurally defaulted claim if the petitioner "'can demonstrate <u>cause</u> for the default <u>and actual prejudice</u> as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice.'" *Matthews v. Evatt*, 105 F.3d at 916, *quoting Coleman v. Thompson*, 501 U.S. at 750 (emphasis supplied by the undersigned). Unless a petitioner can demonstrate both "cause" and "prejudice", this Court will be procedurally barred from considering those claims that are procedurally defaulted. *Daniels v. Lee*, 316 F.3d 477, 486 (4th Cir. 2003). Second, a petitioner may rely on the doctrine of actual innocence. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Waye v. Murray*, 884 F.2d 765, 766 (4th Cir. 1989), *cert. denied*, 492 U.S. 936 (1989).

Whether Cooper's claims have been properly exhausted will be discussed below with respect to each of the four grounds he has raised in his Petition.

### D.  Application of the Antiterrorism and Effective Death Penalty Act of 1996

Because Cooper filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of his collateral attack on his criminal conviction is governed by the parameters set forth in the AEDPA, which amended Section 2254. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.), *cert. denied*, 521 U.S. 371 (1998); *Green v. French*, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  As amended, Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

With respect to the first prong of the analysis under Section 2254(d), the United States Supreme Court has explained that a state court adjudication is "contrary to" clearly established Federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  An "unreasonable application" of Federal law will be found "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-413.  An "unreasonable application" likewise will be found if the state court "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled.  *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (opinion of Kennedy, J.).  Yet as *Williams* teaches, a state court's "unreasonable application" of the law informs the federal court to the extent that the latter "may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Bates v. Lee*, 308 F.3d 411, 417 (4th Cir. 2002), *cert. denied,* 538 U.S. 1061 (2003), *quoting Williams*, 529 U.S. at 411.  The Fourth Circuit has held that this application of federal law must be "objectively unreasonable."  *Oken v. Corcoran*, 220 F.3d 259, 264 (4th Cir. 2000) (noting that the Supreme Court in *Williams* "adopted" the holding in *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999) that the "unreasonable application" inquiry is an objective inquiry.).

Turning to Section 2254(d)(2), the proper analysis for establishing whether there exists an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" is framed by Section 2254(e)(1), which provides that the findings of fact by a state court are entitled to a "presumption of correctness" and the petitioner must bear the burden of rebutting that presumption by "clear and convincing evidence."  *See* 28 U.S.C. § 2254(e)(1).

Although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, such as the issue of ineffective assistance of counsel which is presented in the present case, a federal court must reach an independent conclusion.  *Strickland v. Washington*, 466 U.S. 668, 698 (1984); *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993), *cert. denied*, 114 S.Ct. 487 (1993) (*citing Clozza v. Murray*, 913 F.2d. 1092, 1100 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991)).

To the extent that Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. § 2254(d), as interpreted by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000) ("The *Strickland* test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")  In *Strickland*, the United States Supreme Court set forth two factors that must be considered in evaluating claims of ineffective

assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error

can be shown, the court must consider whether the commission of an error resulted in prejudice

to the defendant.  To meet the first requirement, "[t]he defendant must show that counsel's

representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.

"The proper measure of attorney performance remains simply reasonableness under prevailing

professional norms."  *Turner v. Bass*, 753 F.2d 342, 348 (4th Cir. 1985), *quoting Strickland*,

*(reversed on other grounds*, 476 U.S. 28 (1986)).  In meeting the second prong of the inquiry, a

petitioner must show that he was prejudiced by the error.  *Strickland* requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been different.  A reasonable
> probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's
> challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct .
> . . the court must then determine whether, in light of all the circumstances, the identified acts or
> omissions were outside the <u>wide range</u> of professionally competent assistance.  *Strickland,* 466
> U.S. at 694-95.  (Emphasis added)

### E.  Discussion of Petitioner's Grounds for *Habeas* Relief

### Ground One

I.        Trial counsel ineffective for waiving opening statements.

A. This was prejudicial error and such waiver by trial counsel allowed the
state to paint a one-sided picture of the charge incident concerning
applicant and such waiver sent a direct message to the jury that applicant
was guilty as charged and the defense was not at all challenging or
rebutting the state's case.

First, Cooper alleges that his trial counsel, Carraway, was ineffective for waiving his

opening statement to the jury.  This issue was not raised on direct review.  However, this issue

was raised in the state PCR application and testimony was taken at the PCR hearing.  The state

PCR judge denied relief on that matter.  (App. 254)

This claim was abandoned in the state PCR certiorari proceedings in the South Carolina Court of Appeals when it was not raised in the petition for writ of certiorari. Since Petitioner failed to raise this issue in his PCR appeal, this issue is barred from further state collateral review. *Gallishaw v. South Carolina*, 2006 WL 2475347 at *9 (D.S.C. August 24, 2006), *citing Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 562 n. 3 (1971); *Wicker v. State*, 425 S.E.2d 25 (S.C. 1992); *Ingram v. State of S.C.*, No. 97-7557, 1998 WL 726757 at *1 (4th Cir. Oct. 16, 1998); *Josey v. Rushton*, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); *Aice v. State*, 409 S.E.2d 392, 393 (S.C .1991)(post-conviction relief).

Because there is no current state remedy for Petitioner to pursue this claim, it is fully exhausted. *Coleman v. Thompson*, 501 U.S. 722, 735, n. 1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-298 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir.1996) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."), *cert. denied*, 117 S.Ct. 854 (1997); *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997) ("To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state . . . or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."), *cert. denied*, 522 U.S. 833 (1997).

As a practical matter, because the Petitioner failed to pursue this issue in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts. In the event Petitioner cannot seek relief in a state court, the exhaustion requirement is "technically met" and the procedural bar will apply. *Dupree v. Padula*, 2006 WL 784244 at *5 (D.S.C. March 27, 2006), *citing Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997); *cert. denied*, 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997), *in turn citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115

L.Ed.2d 640 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *and George v. Angelone*, 100 F.3d 353, 363 (4th Cir.1996). The procedural bar to habeas review is an affirmative defense which is waived if not raised by respondents. *Gray v. Netherland,* 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). Respondents contend in their Motion that Petitioner's first issue is procedurally barred from this court's review, and thus have raised this affirmative defense.[11]

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Dupree v. Padula*, 2006 WL 784244 at *5, *citing Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1989). As discussed above, a petitioner may obtain review of a procedurally barred claim by establishing "cause" for the default and "actual prejudice" from the failure to review the claim. *Coleman v. Thompson*, 501 U.S. at 750, *Gray v. Netherland*, 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). Second, a petitioner may rely on the doctrine of actual innocence. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Waye v. Murray*, 884 F.2d 765, 766 (4th Cir. 1989), *cert. denied*, 492 U.S. 936 (1989).

In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that may constitute 'cause' include: (1) 'interference by officials that makes compliance with the State's procedural rule impracticable'; (2) 'a showing that the factual or legal basis for a claim was not reasonably available to counsel'; (3) [the] novelty of the claim; and (4) constitutionally ineffective assistance of counsel." *Wright v. Angelone*, 151 F.3d 151, 160 n.5 (4th Cir. 1998) (citations omitted), *quoting McCleskey v. Zant*, 499 U.S. 467, 493, 494 (1991).

---

[11]    *See* Respondents' Motion [12] at 9; 14.

Cooper argues in his response to Respondents' Motion that "cause" exists "because of the Petitioner['s] incarceration he has no say in what issue should be bring up in writ of certiorari.  When filing writ of certiorari the lawyer that is appointed to the Petitioner makes the decision. Therefore the Petioner [sic] is blameless."[12]

The undersigned does not believe that Petitioner has shown "cause" as that word has been defined by case law in the *habeas* context.  A petitioner must show reasonable diligence in pursuing his claim to establish cause.  *Hoke v. Netherland*, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996).  Furthermore, the claim of cause must itself be exhausted.  *Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Because Petitioner has failed to establish "cause", the court could end its analysis at this point.  *See, e.g.*, *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990), *cert. denied*, 498 U.S. 1035 (1991) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court.").  Yet the court notes that Petitioner likewise cannot show prejudice with respect to his first ground for habeas relief.  A petitioner must show some error to establish prejudice.  *Tucker v. Catoe*, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054, 121 S.Ct. 661, 148 L.Ed.2d 563 (2000).  In other words, a petitioner must show "actual prejudice resulting from the alleged constitutional violation."  *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.2d.2d 434 (1986), *quoting Wainwright v. Sykes,* 433 U.S. at 84; *see also Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir.), *cert. denied*, 519 U.S. 1016 (1996) (In order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.).[13]

---

[12]     *See* Petitioner's Response [16-1] at p. 1.

[13]     Because Petitioner admitted to shooting Conyers, the court will not discuss the other method for excusing default, *viz.,* "actual innocence."  *See O'Dell v. Netherland*, 95 F.3d 1214, 1246 (4th Cir.1996), *aff'd*, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).

Petitioner did not address the prejudice prong of the "cause and prejudice" test. Regardless, it cannot be said that a "constitutional violation" occurred when appellate counsel failed to raise this issue in the Petition for Writ of Certiorari following the PCR decision.  It could be expected that appellate counsel would know that a trial counsel's decision to waive his opening statement is a tactical decision that is not subject to review under *Strickland*.  "Although it may be unusual to waive an opening statement, such a decision is essentially tactical in nature, and not objectively unreasonable."  *Huffington v. Nuth*, 140 F.3d 572, 583 (4th Cir. 1998), *citing Nguyen v. Reynolds*, 131 F.3d 1340, 1350 (10th Cir. 1997); *United States v. Rodriguez-Ramirez*, 777 F.2d 454, 458 (9th Cir. 1985); *cf. Hunt v. Nuth*, 57 F.3d 1327, 1332 (4th Cir. 1995) (waiver of opening statement until after prosecution's case is essentially tactical decision within the wide range of reasonable attorney conduct).

In conclusion, the undersigned is of the opinion that Petitioner's first claim is procedurally barred from consideration by this Court.  *See* 28 U.S.C. § 2254.

## Ground Two

II.      Trial Counsel talked against the Applicant.

A. In closing argument, trial counsel discredited the Appellant saying he screwed up bad and he's 100% to blame for what happened that night. Then trial counsel said that an accident is when you're walking along something falls out of somewhere. This isn't an accident - stated by trial counsel.

Next, Cooper alleges that his trial counsel, Carraway, provided ineffective assistance of counsel because of what he said in his closing statement.  This issue was not raised on direct review, but was raised in the state PCR application and testimony was taken at the PCR hearing. The state PCR judge denied relief on this issue.  (App. 255-256)  This claim, too, was abandoned when it was not raised in the state PCR certiorari proceedings  Since Petitioner failed to raise this issue in his PCR appeal, the exhaustion requirement is technically met, and the issue is procedurally barred from review by this court.  *See Gallishaw v. South Carolina*, 2006 WL 2475347 at *9, *supra, citing cases.*

Respondents have argued in their Motion that this issue is barred from review by this court.[14]  Since this issue was not pursued by the Petitioner in his PCR appeal, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence.  *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Waye v. Murray*, 884 F.2d 765, 766 (4th Cir. 1989), *cert. denied*, 492 U.S. 936 (1989).  Petitioner again argues, with respect to "cause", that he had to rely on his appellate attorney to choose the issues to present in the petition for certiorari.  As with the first issue, the Petitioner has not established cause or prejudice, or actual innocence.  Because Petitioner has failed to show cause or prejudice for failing to present this claim, and he cannot show actual innocence, Petitioner's second claim is not properly before the court.

## **Ground Three**

III.     The lower court erred in failing to charge accident in the case.

> A. Mrs. Conyers stated that we got close to each other and she reached out and she don't know if he thought I was trying to grab the gun or what. Also when Mrs. Conyers ask by trial counsel did she touch the gun at all? Mrs. Conyers "I don't remember", Mrs. Conyers stated that after she got shot appellant didn't realize that he still had shot me.

Next, Petitioner claims that the trial court erred when it failed to charge the jury with the law regarding accident as a defense.  This issue was raised as the sole issue in the *Anders* brief filed in Petitioner's direct appeal of the jury verdict.  (App. 145-153)  As a threshold matter, however, the failure to instruct the jury on the law of accident was never preserved at trial.  The record reveals that Cooper's trial counsel did not request an "accident" instruction, counsel did not object to the trial court's failure to instruct on the law of accident, and counsel did not argue in any motion for a new trial that this instruction should have been included.  (App. 93-95; 123; 129-132) Therefore, the trial court did not have an opportunity to rule upon the objection.  *See State v. Ford*, 334 S.C. 444, 513 S.E.2d 385 (Ct.App. 1999) (to preserve an objection to jury

---

[14]     *See* Respondents' Motion [12] at 9; 16.

charge, defendant must raise the issue at trial).  In addition, Rule 20(b) of the South Carolina

Rules of Criminal Procedure provides:

> Notwithstanding any request for legal instructions, the parties shall be given the
> opportunity to object to the giving or failure to give an instruction before the jury retires,
> but out of the hearing of the jury.  Any objection shall state distinctly the matter objected
> to and the grounds for objection.  Failure to object in accordance with this rule shall
> constitute a waiver of objection.

The failure to make a timely request for a an instruction barred its consideration in an

appeal, and, accordingly, the Court of Appeals dismissed the appeal on December 17, 2001,

"hold[ing] there are no directly appealable issues that are arguable on their merits."  (App. 157)

The issue also was raised to the PCR court, but Cooper's trial counsel, Carraway,

testified in the PCR proceeding that "I didn't think there was enough evidence on the record for

that [a jury charge on accident] because it wasn't an accident."  (App. 224, lines 7-15)  Judge

Harwell held at the hearing that the issue was moot because it had been raised on direct appeal

and dismissed.  (App. 234)  In Judge Harwell's Order denying PCR relief, he held:

> At the hearing the Applicant also complained for the first time that
> counsel failed to discuss the defense of accident with the Applicant and
> that counsel should have requested a jury charge on accident.  Trial
> counsel testified, and this Court finds, that counsel explained the law
> respecting accident and ABWIK as well as the defense prepared for trial.
> This Court finds that a charge on the law of accident was not available
> to the Applicant based upon the evidence presented at trial and that the
> defense strategy was reasonable in view of the facts of the case and the
> evidence presented at trial.  (App. 255)

This issue was raised in the Final *Anders* Brief before the S.C. Court of Appeals.  (App.

145-153)

The lack of a request for the instruction at trial bars consideration also of the issue in a

federal habeas proceeding.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Bond v. Procunier*, 780

F. 2d 461 (4th Cir. 1986)(failure to object to jury instruction bars habeas consideration).

Although it appears to the court that Petitioner argues by brief that Conyers testimony could be

viewed as supporting a jury charge on the law of accident, the fact nonetheless remains that

Petitioner's counsel did not request this charge or object to the charges made. As Petitioner has failed to show cause and prejudice from the procedural default, or actual innocense, this issue is barred from habeas review.

### Ground Four

IV.     Trial counsel ineffective for not requesting a jury instruction on the lesser included offense of Assault and Battery of a High and Aggravated Nature.

       A. Trial counsel decline the offer not once but three times. Counsel testified that he refused the ABHAN instruction to prevent a compromise verdict. This was not a reasonable tactic when petitioner was holding a loaded hand gun. Since the nature of Petitioner's intent was very much in dispute at trial, the jury could rationally have convicted petitioner of ABHAN if that option had been accepted.

In his fourth ground for habeas relief, Petitioner contends that trial counsel was ineffective in failing to request an instruction on assault and battery of a high and aggravated nature as a lesser included offense. This issue was raised at the PCR hearing and denied (App. 255-256) and was the sole issue raised on certiorari to the South Carolina Supreme Court. Therefore, because Petitioner has presented this claim to the state courts, and exhausted such state remedies that were available, he properly may bring this claim in his habeas Petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

With respect to Petitioner's claim of ineffective assistance of counsel, Petitioner testified during the PCR hearing that his trial counsel, Carraway, failed to discuss with him whether the jury should be charged with the lesser-included offense of ABHAN and that counsel was ineffective for failing to request the charge. (App. 189, lines 18-25; 196, lines 6-15).

However, the trial transcript reflects that the trial court asked trial counsel whether Petitioner wanted an ABHAN charge. (App. 125, line 12-126, line 25). The trial transcript also reflects that trial counsel discussed the matter with Petitioner and advised the trial court that Petitioner "specifically did not want (the trial judge) to charge the lesser-included offense." (App. 126, lines 4-11). For strategic reasons, Petitioner refused the ABHAN charge and Carraway so advised the trial court. (App. 213, line 24-214, line 14; 217, lines 18-25).

At the PCR hearing, trial counsel testified that prior to trial, Petitioner rejected the State's offer to plead guilty to ABHAN because Petitioner did not want to serve any time in jail at all, and believed that the incident was an accident which rendered him innocent of the charge.  (App. 206, lines 4-25; 208, line 21; 210, line 3)  Trial counsel also testified that he discussed with Petitioner the law relating to assault and battery with intent to kill, ABHAN, and accident.  (App. 206, lines 4 - 25; 208, line 21; 213, line 24 to 214, line 14)

Trial counsel testified that the defense developed for trial was that Petitioner did not possess the intent to kill the victim and that the State failed to meet its burden of proof on this critical element of assault and battery with intent to kill because the victim testified Petitioner did not intend to kill her.  (App. 226, lines 6 - 16; 227, lines 12-18; 221, line 11 - 224, line 15; 226, lines 6-16; 227, lines 12-18; 233, lines 6 - 7; 237, lines 13 - 23; 242, lines 18 - 23).  It was counsel's opinion the jury would not find Petitioner guilty of assault and battery with intent to kill.  Further, it was trial counsel's opinion the jury would have returned a compromise verdict of ABHAN rather than an acquittal if the jury was presented with an ABHAN charge.  (App. 210, line 3; 244, line 15 - 245, line 25).  Carraway explained that, based upon Petitioner's earlier rejection of pleading to ABHAN, as well as Petitioner's rejection of the possibility of any incarceration as a possible consequence, and the State's expected failure to prove Petitioner's intent to kill, counsel suggested an "all or nothing" strategy to obtain the result Petitioner desired.  (App. 210, line 23; 211, line 22; 233, lines 6-7; 237, lines 13-23; 242, lines 18-23; 246, line 21 to 247, line 19; 244, line 15 to 245, line 25).  Trial counsel discussed the strategy with Petitioner and Petitioner directed counsel to pursue the strategy to avoid possible incarceration. (App. 246, line 21 to 247, line 19; 244, line 15 to 245, line 25; 213, line 24 to 214, line 14; 217, lines 18-25).

As Judge Harwell held, Carraway provided representation within the range of competence required in criminal cases.  *Strickland v. Washington*, 466 U.S. 668 (1984). Carraway's performance was reasonable under profession norms, and the Petitioner, who bore

the burden of proof in the post-conviction proceeding, failed to show that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Under the AEDPA, a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the *Strickland* test. *See Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). ("The *Strickland* test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.") This court finds that the *Strickland* test was properly applied by the state courts, and recommends that habeas relief be denied to Petitioner.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Respondents' Motion for Summary Judgment **[13-1] should be granted, and that Petitioner's Petition [1-1] should be denied and dismissed.**

S/George C. Kosko_____
United States Magistrate Judge

September 15, 2006

Charleston, South Carolina

<u>**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**</u>
<u>**& The Serious Consequences of a Failure to Do So**</u>

  The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

  During the period for filing objections, **but <u>not</u> <u>thereafter</u>**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).  *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

   **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * *  This duplication of time and effort wastes judicial**

> **resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * *  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

> **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* <u>Wright v. Collins</u>, <u>supra</u>; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
